IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| APRIL MCCORMICK, *et al.*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-0127-N |
| | § | |
| 7-11, INC., CETERGY PAYMENT | § | |
| RECOVERY SERVICES, INC., | § | |
| CERTEGY CHECK SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

Before the Court is Defendant 7-11, Inc. ("7-11"), Certegy Check Services, Inc. ("CCS"), and Certegy Payment Recovery Services, Inc.'s ("CPRS") (collectively "Defendants") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) [10]. Defendants contend Plaintiff McCormick failed to state a claim for which relief can be granted. Specifically, Defendants argue that McCormick failed to allege any facts supporting the assertion that 7-11 and CCS qualify as "debt collectors" for purposes of the Federal Fair Debt Collection Practices Act ("FDCPA"). Defendants further claim McCormick failed to allege either party violated sections 806, 807, or 808 of the FDCPA. For reasons explained below, the Court denies Defendants' motion with regard to McCormick's section 808 claim, but otherwise grants Defendants' motion to dismiss McCormick's FDCPA claims. Because certain of McCormick's FDCPA claims remain, the Court exercises supplemental jurisdiction over McCormick's state law claims pursuant to 28 U.S.C. § 1367.

## I. FACTUAL BACKGROUND

On or about January 6, 2005, McCormick proffered a check to 7-11 in the amount of $11.91, which was subsequently returned for insufficient funds. A sign at the register represented that all returned checks would be subject to a $25.00 service charge. In a letter dated January 18, 2005, CPRS notified McCormick that CCS purchased the unpaid check from 7-11 and hired CPRS to collect the amount in arrears along with an additional $30.00 service charge. According to McCormick, the letter fails to set forth the corporate relationship between CCS and CPRS. Furthermore, McCormick alleges the $30.00 service charge exceeds the $25.00 dollar amount to which 7-11 represented any returned unpaid check would be subject. On these facts, and tracking the statutory language, McCormick claims Defendants violated FDCPA sections 806, 807, and 808.[1] *See* 15 U.S.C. §§ 1692d, 1692e, and 1692f. McCormick further alleges various state law claims, requesting the Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## II. MOTION TO DISMISS STANDARD

Under Rule 12(b)(6), a court may dismiss an action when the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, the Court must take all facts pled in the complaint as true and only grant the motion

---

[1] McCormick claims Defendants violated section 806 "which prohibits a debt collector from engaging in any conduct, the natural consequences for which is to harass, oppress, or abuse any person in connection with the collections of a debt," Complaint, at ¶ 37; section 807 "which prohibits the use of any false, deceptive, or misleading representation or means in connection with the collection of a debt," Complaint, at ¶ 38; and section 808 "which prohibits the use, by a debt collector, of any unfair or unconscionable means to collect or attempt to collect any debt," Complaint, at ¶ 39.

if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, "a plaintiff must plead specific facts, not mere conclusory allegations," and "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Collins*, 224 F.3d at 498 (5th Cir. 2000); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

### III. 7-11 AND CCS ARE NOT DEBT COLLECTORS UNDER THE FDCPA

In enacting the FDCPA, Congress sought "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Congress further defined the term "debt collectors" narrowly in an effort to target specific entities to which the FDCPA's strictures would apply. *See* 15 U.S.C. § 1692a(6). Thus, to invoke the FDCPA's protections, a party must first allege the entity against whom he or she seeks relief qualifies as a debt collector under the Act.

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). While the

Act generally excludes "creditors" from the definition,[2] a creditor will qualify if: (1) "in the process of collecting his own debts, [a creditor] uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts . . . ," *id.*, or (2) the creditor "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Id.* Thus, reading these provisions together, a "debt collector" includes: "(1) entities in a business the principal purpose of which is the collection of debts; (2) persons who regularly collect or attempt to collect, directly or indirectly, debts owed or due another; and (3) creditors, who in the process of collecting their own debts, use any manner that would indicate that a third person is collecting or attempting to collect such debts." *Id.*

Here, McCormick does not allege that 7-11 retained any interest in a debt it intended to collect, or that 7-11 qualifies as a debt collector under the Act. In her complaint, McCormick incorporated CPRS's collection letter "verbatim as if set forth completely for all intents and purposes." Complaint, at ¶ 11. In that letter, CPRS specifically informed McCormick that CCS purchased the unpaid check from 7-11 and that the check had been referred to CPRS for collection. Nowhere in the letter did CPRS state or even suggest it intended to collect on 7-11s behalf. In fact, nowhere in her complaint does McCormick claim 7-11 attempted to collect a debt. In her response to this motion, McCormick claims

---

[2] The FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

the processing fee "could only belong to 7-Eleven," intimating that, with CPRS's letter, 7-11 too attempted to collect a debt, but, again, McCormick fails to provide any specific factual support for this allegation. Thus, on these facts, 7-11 is not a "debt collector" under the Act. Accordingly, the Court dismisses McCormick's FDCPA claims against 7-11.

McCormick presents a much closer argument that CCS qualifies as a debt collector, but ultimately fails to plead that CCS engages in, as its principal purpose, the collection of debt. McCormick alleges that CCS purchased the check in default and subsequently assigned the collection activity to CPRS. McCormick further alleges that this action was "Defendants' routine procedure for collecting dishonored checks." CITE  However, McCormick's allegations fail to fit CCS within section 1692a(6)'s parameters. McCormick's complaint intimates that CCS routinely assigns collection activity to CPRS, not that CCS itself is an entity "in a business the principal purpose of which is the collection of debts." 15 U.S.C. § 1692a(6). Thus, CCS is not a "debt collector" subject to the FDCPA's strictures.

Because CCS is not a "debt collector," it cannot be held liable for CPRS's collection activity. When, as here, a party receives a debt in default and assigns the collection activity to another on its behalf, the assignor may remain vicariously liable for the unlawful collection activities of the assignee, provided the assignor itself meets the definition of "debt collector." *See Police v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994) (holding company vicariously liable for its attorney's conduct); *cf. Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) (declining to hold company liable for attorney's actions because

company failed to meet the definition of "debt collector").[3] As set forth above, McCormick fails to allege that CCS is a "debt collector" under the FDCPA. Thus, CCS cannot be held liable for CPRS's actions. Accordingly, the Court dismisses McCormick's FDCPA claims against CCS.

### IV. MCCORMICK FAILS TO SET FORTH CLAIMS UNDER SECTIONS 806 AND 807

Once an entity qualifies as a "debt collector," that entity becomes subject to the FDCPA's strictures, which, as mentioned above, aim "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The specific sections at issue here include sections 806, 807, and 808. Section 806 prohibits a debt collector from engaging in conduct that serves to "harass, oppress or abuse." *Id.* at § 1692d. Section 807 prohibits the use of any "false, deceptive, or misleading representations or means" in connection with collecting a debt. *Id.* at § 1692e. Finally, section 808 prohibits the use of "unfair or unconscionable" means by a debt collector to collect a debt. *Id.* at § 1692f. When evaluating FDCPA claims, courts employ "objective standards based on the concepts of the 'least sophisticated consumer' or the 'unsophisticated consumer.'" *McKenzie v. E.A. Uffman and Assoc., Inc.*, 119 F.3d 358, 362 (5th Cir. 1997).

---

[3] The Third Circuit concluded that "[a]lthough these cases involved the attorney-client situation, we believe they may be applied" outside the attorney-client context. *Police*, 225 F.3d at 405.

Because 7-11 and CCS fail to qualify as "debt collectors," the following analysis focuses primarily on CPRS.

McCormick's section 806 claim fails for lack of specific factual allegations. Under section 806, Congress lists six types of "harassing, unfair, or deceptive" conduct. Legislative history indicates that Congress did not intend the list to be exhaustive; it intended "courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." S. Rep. No. 95-382 at 1. Yet, even under this generous reading of section 806, McCormick fails to allege facts that support a claim against CPRS. Not even in her response to this motion does McCormick adequately articulate a claim that CPRS engaged in harassing, unfair, or deceptive conduct. The Court accordingly dismisses McCormick's section 806 claim.

With regard to McCormick's 807 claim, the Court finds no "false, deceptive, or misleading representation or means in connection with the collection of the debt" on CPRS's part. 15 U.S.C. § 1692e. First, McCormick claims CPRS's collection letter "confused" the corporate relationship between CPRS and CCS. Certainly, deception and misleading can occur in degrees and, were parties required to disclose corporate relationships, failing clearly to do so might be deceptive or misleading. Yet, under the FDCPA, a party need not disclose any corporate affiliation with the person for whom it collects debts, and McCormick fails to further explain how "confusing" the corporate relationship with CCS violates section 807. *See, e.g.*, *Orenbuch v. North Shore Health Systems, Inc.*, 250 F. Supp. 2d 145, 152 (E.D.N.Y. 2003) ("nothing in the text of the FDCPA requires disclosure of a debt collector's

corporate affiliation"). Because the law does not require CPRS to clearly set forth its corporate relationship with it's clients and because McCormick provides the Court no additional factual allegations of false, misleading, or deceptive conduct, the claim fails.

McCormick's claim regarding the processing fee presents a much closer issue and implicates both section 807 and section 808. (Section 808 is discussed below). Again, McCormick's complaint alleges 7-11 represented that returned checks would be subject to a processing fee not to exceed $25.00, but CPRS's collection letter sought a $30.00 fee. "The least sophisticated consumer" or "unsophisticated consumer" could agree that charging a $30.00 processing fee after advertising only a $25.00 fee is "deception" or "misleading." Additionally, section 808's proscription of "unfair or unconscionable means to collect or attempt to collect a debt," prohibits a collector from collecting "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

McCormick's section 807 claim against CPRS fails because CPRS made no deceptive or misleading statements. McCormick fails to allege that CPRS engaged in deceptive or misleading conduct. On its face, the collection letter – which McCormick incorporates – appears purely informational: it notified McCormick that CCS purchased the check, that CCS referred the check to CPRS, and that CPRS sought $41.91, including the processing fee, on CCS's behalf. App. 05. McCormick fails to show how the letter deceives or misleads. Furthermore, McCormick fails to allege that the letter contradicts a previous statement or

representation made by CPRS. Accordingly the Court dismisses McCormick's section 807 claim.

## V. MCCORMICK STATES A CLAIM UNDER SECTION 808

Section 808(1) prohibits a debt collector from collecting "any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such obligation is expressly authorized by the agreement creating the debt or permitted by law." Texas law permits the recovery of "a reasonable processing fee of not more than $30." TEX. BUS. & COM. CODE ANN. § 3.506(a). McCormick alleges two ways in which the $30.00 fee imposed by CPRS violates section 808: First, McCormick claims the fee was in excess of the agreement creating the debt, and, second, that it violated Texas law. Because $30.00 exceeds the alleged agreement, the Court will focus on whether McCormick alleges a violation of Texas law.

Because she challenges the reasonableness of CPRS's fee, McCormick states a claim that CPRS violated section 808 of the FDCPA. In paragraph 13 of her complaint, McCormick alleges that both the $25.00 and $30.00 fees are unreasonable and thus violate Texas law. As mentioned above, Texas law allows for the imposition of a "reasonable fee" not to exceed $30.00. Defendants argue that because Texas law allows the collection of a fee up to $30.00, the fee imposed here was reasonable as a matter of law. In other words, Defendants would have the Court read the statute as imposing a single requirement for the imposition of a fee: that the fee not exceed $30.00. McCormick, on the other hand, encourages the Court to read the statute as imposing two requirements of any imposed fee:

(1) that the fee be reasonable, *and* (2) that it not exceed $30.00. The Court declines Defendants' invitation to find that any fee up to and including $30.00 is reasonable as a matter of law. Accordingly, because McCormick's complaint challenges the reasonableness of the fee and because "reasonableness" is a fact issue, the Court denies Defendants' motion to dismiss McCormick's section 808 claim against CPRS.

### V. THE COURT EXERCISES SUPPLEMENTAL JURISDICTION OVER MCCORMICK'S STATE LAW CLAIMS

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(b). Because the Court does not "dismiss[] all claims over which it has original jurisdiction," *id.* at § 1367(c)(3), and in the interest of judicial economy, the Court will exercise supplemental jurisdiction over McCormick's state law claims, pursuant to section 1367.

Signed October 30, 2006.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 10