IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| APRIL MCCORMICK, *et al.*, | § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | Civil Action No. 3:06-CV-0127-N |
| 7-ELEVEN, INC., *et al.* | | |
| Defendants. | | |

## **ORDER**

This Order addresses Plaintiff April McCormick's motion and amended motion to certify class [122] [125]. For the following reasons, the Court grants the amended motion.[1]

### I. FACTUAL BACKGROUND

On or about January 6, 2005, McCormick wrote a check to 7-Eleven, Inc. ("7-Eleven") in the amount of $11.91. At the point of sale, the 7-Eleven store had posted a sign advising that dishonored checks returned for insufficient funds would be charged a service fee of "$25 or the maximum allowed by law." In addition to the sign, 7-Eleven's check acceptance policy mandates that each check be stamped or "franked" on the back with language that the check writer must sign, authorizing the electronic debit of a service fee in the event the check is returned unpaid. At the time of purchase, McCormick signed the franking language on her check authorizing the service fee. Following McCormick's

---

[1] The Court grants Defendants' motion for leave to file notice of additional authority [141], and considers that authority and McCormick's response in the preparation of this Order.

purchase, her 7-Eleven check was returned for insufficient funds. On January 18, 2005, McCormick received a standardized collection letter from Certegy Payment Recovery Services ("CPRS") notifying her that Certegy Check Services, Inc. ("CCS") had purchased McCormick's check from 7-Eleven and that she owed a $30.00 service charge in addition to the unpaid balance of the check. The letter also advised McCormick how to contact CPRS in the event she disputed the amount to be collected. McCormick did not contact CPRS to dispute the debt, and CPRS subsequently debited $11.91 and the $30 service charge from McCormick's account. McCormick now seeks to certify a class action against 7-Eleven, Inc., CPRS, and CCS (collectively "Defendants") for their collection practices on defaulted checks.

McCormick moves the court for an order certifying a class consisting of all consumers in the states of Texas, Hawaii, Montana, Oregon, Kentucky, Missouri, or Colorado who, between January 14, 2004 and the date that the class is certified: (1) received a letter or notice from Defendants or their agents collecting or attempting to collect a service charge or processing fee in connection with a check returned for insufficient funds, and (2) paid a service charge or processing fee to Defendants or their agents. McCormick alleges that CPRS collected an illegal service charge in her case, and that it uses a standardized process to obtain an illegal charge each time it collects on a defaulted check. She argues that CPRS's service charges are illegal with regard to each putative class member for violating the reasonableness requirement that each of the seven states in the class definition impose on this kind of service charge.

ORDER – PAGE 2

## II. STANDARDS FOR CLASS CERTIFICATION

Under Federal Rule of Civil Procedure 23, the Court must "determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c). The Court has wide discretion in determining whether to certify a class; however, that discretion must be exercised within the bounds of Rule 23. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). Furthermore, in making this determination, the Court must undertake a rigorous analysis of Rule 23's prerequisites by probing beyond the pleadings to understand the claims, defenses, and relevant facts. *See Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). Although the Court does not consider the merits of the plaintiffs' claims in determining whether to certify the proposed class, the Court must consider the "the nature and range of proof necessary to establish the plaintiffs' substantive allegations" if it is adequately to conduct the rigorous analysis called for under Rule 23. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*, 2006 WL 2521183, at *4 (D. Ariz. 2006); *see Castano*, 84 F.3d at 741 ("In order to make the findings required to certify a class action under Rule 23(b)(3) . . . one must initially identify the substantive law issues which will control the outcome of the litigation.") (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir. 1978)).

A case may proceed as a class action only if the party moving for certification demonstrates that it has met all four requirements of Rule 23(a) as well as at least one of the three requirements of Rule 23(b). *See Feder v. Electronic Data Sys.*, 429 F.3d 125, 128 (5th Cir. 2005). Under Rule 23(a), the moving party must demonstrate that: (1) the class is so

numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  FED. R. CIV. P. 23(a).

In this case, McCormick relies on Rule 23(b)(1)(A),(b)(2) and (b)(3), in the alternative, in support of class certification.  Under Rule 23(b)(2), a class action is appropriate when the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole.  FED. R. CIV. P. 23(b)(2).  The Court already dismissed McCormick's claim for declaratory relief, *see* Order of Sept. 29, 2008, finding that her other claims would afford her full relief, and that a remedy other than a declaratory judgment would be more effective or appropriate under the circumstances.  *See Dresser Indus., Inc. v. Ins. Co. of N. America*, 358 F. Supp. 327, 330 (N.D. Tex. 1973).  Monetary relief predominates unless it is incidental to injunctive or declaratory relief.  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414 (5th Cir. 1998), and in this case, because McCormick's request for monetary relief clearly predominates over her request for injunctive or declaratory relief, certification under Rule 23(b)(2) would be improper.  *Id.* at 411.

Accordingly, in order to certify the class, the Court must find that certification is proper under Rule 23(b)(1)(A) or Rule 23(b)(3).  Under Rule 23(b)(1)(A), class certification

is appropriate if the plaintiff can demonstrate that the prosecution of separate actions by individual members of the class would establish incompatible standards of conduct for the party opposing the class. *See* FED. R. CIV. P. 23(b)(1)(A). Alternatively, the Court may certify the class if it finds that, under Rule 23(b)(3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* FED. R. CIV. P. 23(b)(3).

### III. MCCORMICK WAIVES CLASS CERTIFICATION OF HER TDCA, DTPA, AND BREACH OF CONTRACT CLAIMS

The Court, though not reaching the merits, must consider how plaintiffs' claims will be tried, individually or on a class basis, *Castano*, 84 F.3d at 744, in order to determine the appropriateness of class certification. The party seeking class certification bears the burden of establishing that all requirements of Rule 23 have been satisfied. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001). McCormick's Brief in Support of Class Certification makes only passing reference to possible class Texas Debt Collection Practices Act (TDCA), TEX. FIN. CODE ANN. § 392 (Vernon 2006), Deceptive Trade Practices Act (DTPA), TEX. BUS. & COM. CODE ANN. § 17 (Vernon 2006), and breach of contract claims (though she presents arguments relating to a breach of contract claim in her Reply Brief). McCormick presents no discussion arguing for the class-wide resolution of these claims in her certification brief, and therefore does not come close to meeting the burden of a party seeking class certification with regard to those claims. For this Court to speculate as to the viability of those claims in a class action, notwithstanding the lacunae in

McCormick's class certification brief, would come close to reversing the proper burden of proof by essentially requiring Defendants to show cause why the court should not certify the class. *See In re American Medical Sys.*, 75 F.3d 1069, 1086 (6th Cir.1996). Therefore, the Court finds that McCormick has waived inclusion of any DTPA, TDCA, and breach of contract claims in her proposed class action. This leaves her claim under the Federal Debt Collection Practices Act (FDCPA) Section 808, 15 U.S.C. § 1692(f), as the only possible class claim. Furthermore, because the Court dismissed any FDCPA claims against the 7-Eleven and CCS by Order dated October 30, 2006, this leaves CPRS as the sole defendant in a possible class action.

### IV. MCCORMICK MEETS THE THRESHOLD REQUIREMENTS OF RULE 23(A)

While the numerosity of the proposed class is undisputed, Defendants challenge class certification on commonality, typicality, and adequacy grounds. The test for commonality and typicality under Rule 23(a) are not demanding. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th. Cir. 2001). All that is required to satisfy the commonality requirement is "one common question of law or fact." *Id.* A common question of fact central to the case is whether CPRS's service charge is reasonable, thereby establishing commonality.

Defendants contend that McCormick is not a typical member of the class because her individual claim is subject to a unique defense, namely that she had already paid a $30 CPRS service charge on a defaulted check within weeks of the 7-Eleven transaction. Accordingly, the Defendants state, McCormick knew or should have known about the fee, making the argument that she authorized it particularly forceful in her case. They also point to potential

differences in the ways that each member of the class may have agreed to the fee in an effort to show that there is no possible typicality of claims in this case. However, the test for typicality is not demanding, and focuses on the similarity between the named plaintiff's legal and remedial theories and the theories of those whom they purport to represent. *Id.* McCormick's claim does not turn on the specifics of authorization. She argues that the amount charged was unreasonable regardless of any purported agreement. Insofar as that is her complaint, she is a typical member of the class she seeks to certify.

Defendants attack McCormick's adequacy as a class representative based on her refusal to answer questions pertaining to the defaulted check to GameStop which she had written prior to the 7-Eleven transaction. At the time, the Court had ruled provisionally that McCormick's prior history of being charged collection fees was not pertinent. Additionally, McCormick had entered a filed stipulation regarding the GameStop check. Accordingly, McCormick's refusal to answer certain questions during deposition do not indicate her unsuitability as a class representative. Since Defendants have previously stipulated to the competency of the proposed class counsel and there is no conflict of interest between McCormick and the class she seeks to represent, *see id.*, the Court finds that McCormick meets the adequacy requirement of Rule 23(a).

## V. CERTIFICATION UNDER RULE 23(B)(1)(A) IS NOT PROPER

McCormick argues that class certification is warranted under Rule 23(b)(1)(A) because separate actions might result in inconsistent or varying adjudications that would

establish incompatible standards of conduct for CPRS. While certification under this provision most often involves injunctive relief, which this Court has already denied, Rule 23(b)(1)(A) also allows certification in certain suits for money damages, where a party is obliged by law to treat the members of the class alike or where the party must treat all alike as a practical necessity. *See Whittington v. United States*, 240 F.R.D. 344, 354-55 (S.D. Tex 2006).

   CPRS is not required to treat all members of the proposed class alike as a matter of law. McCormick also fails to show that CPRS would have to treat all the class members alike as a matter of practical necessity. McCormick states that, were the claims to proceed individually instead of as a class, the same service charge dollar amount might be held unreasonable in one case while being found permissible in another. These different rulings on what constitutes a reasonable charge would create unintelligible standards of conduct for CPRS, according to McCormick. However, varying adjudications on what exceeds the dollar limit of a reasonable service charge in different cases would not thereby establish incompatible or unintelligible standards for what would fall well within the bounds of reasonable. For instance, even if two fact finders were to decide differently regarding the reasonableness of a $30 dollar service charge in separate cases brought by two individuals against CPRS, this would not create an unintelligible standard of conduct for CPRS insofar as it could set its service charges well below $30 dollars at, for instance, $5 dollars, to possibly avoid being found unreasonable in the future.

Thus, the mere possibility of inconsistent findings in two different cases regarding the reasonableness of the same dollar amount charge is not enough to meet Rule 23(b)(1)(A) requirements, because CPRS would be able to comply with the judgments in all such cases. While inconsistent judgments could "cast a pall of uncertainty over the merits of unlitigated claims for refunds [,] . . . these inconsistencies and uncertainties would not place defendants in the dilemma of the sort contemplated by (b)(1)(A), for the varying adjudications would not preclude compliance with the judgment in each case." *Walker v. City of Houston*, 341 F. Supp. 1124, 1131 (S.D. Tex. 1971). Accordingly, certification is not warranted under Rule 23(b)(1)(A).

### VI. CERTIFICATION IS WARRANTED UNDER RULE 23(B)(3) BECAUSE THE PROPOSED CLASS MEETS THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS

McCormick alternatively seeks certification under Rule 23(b)(3). Since the FDCPA Section 808 claim is the only one remaining in McCormick's proposed class action, under Rule 23(b)(3) this Court must now determine whether common questions of law and fact would predominate over questions affecting individual class members in the resolution of that claim. FDCPA Section 808 prohibits, in the context of debt collection, the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. *See* 15 U.S.C. § 1692(f). Thus, under the FDCPA, CPRS may impose a service charge (i) if the customer expressly agrees to the charge in the contract creating the debt or (ii) the charge is permitted by law. *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999). Under prong (i), the charge must be expressly provided for in the contract creating

the debt and also not be prohibited by state law. *See* Staff Commentary on the FDCPA, 53 Fed.Reg. 50,097, 50,108 (Fed. Trade Comm'n 1988); *see also Tuttle*, 190 F.3d at 13 ("If state law expressly prohibits service charges, a service charge cannot be imposed even if the contract allows it . . . .")

CPRS uses a standardized electronic or manual process to collect on dishonored checks, and both types of collection cost CPRS less than one dollar per check in all cases. Akins Depo. 116:6-13, McCormick's Appx. 12. McCormick contends that CPRS's service charge violates the reasonableness standard of all the state laws in question for being grossly disproportionate to the cost of re-presentment. Given that the cost of re-presentment is always less than one dollar, whether CPRS's service charges – set at the statutory maximum of each state – are unreasonable in relation to this cost is a common question of fact.

McCormick uses the premise that the service charge is uniformly unreasonable to make two slightly different arguments for why the service charge violates the FDCPA: the imposition of an allegedly unreasonable service charge is not only not expressly permitted by state law, but (1) cannot be authorized by a contract because it would be prohibited by the same state law or (2) violates the contracts between customers and CPRS, which only authorize charges "allowed by law," since the service charge is unreasonable and therefore not "allowed by law." According to McCormick, CPRS's service charge is either unauthorizable or unauthorized, and also not otherwise permitted by state law, therefore violating FDCPA Section 808.

Defendants contend that class certification is improper because individual questions of fact predominate in this case. According to Defendants, determining CPRS' liability under the FDCPA to any member of the proposed class would require determining whether that individual agreed to the service charge, which would make a class wide resolution of the FDCPA claim impossible. Defendants cite to *Harrell* in which a plaintiff brought class claims under FDCPA Section 808 and in which the court denied certification of a proposed statewide class consisting of individuals from whose accounts the defendant had debited service charges without the account owner's prior authorization or permission. *Harrell v. CheckAgain, LLC*, 248 F.R.D. 199, 207 (S.D. Miss. 2006). The court in *Harrell* found that before an individual could be added to the class, one would have to determine whether that individual entered an agreement authorizing the charge or whether the charge was permitted due to a point-of-sale notice.

In this case, however, McCormick is making a different argument for why CPRS' collection practice violates FDCPA Section 808. Unlike the class considered for certification in *Harrell*, her proposed class does not include as a criteria for membership the fact that an individual did not authorize fee collection. She is not claiming that the charges were improper because no charge was authorized, but rather, that the charges were unreasonable and thus incapable of being authorized, or exceeded what was authorized. Thus, *Harrell* and *BioPay*, which Defendant files as supplementary authority, are inapposite. *See Gene and Gene LLC v. Biopay LLC*, 541 F.3d 318 (5th Cir. 2008) (in which the Court decertifies a class action on the grounds that the possibility of individual consent to a common, automated

ORDER – PAGE 11

process defeats predominance). If McCormick's theory is correct, differences in how or whether a check writer may have authorized a charge, through express or implied agreement, through check franking or by a sign at the point of sale or prior knowledge, are irrelevant. The Court does not weigh the merits of McCormick's claim at this stage; regardless whether McCormick is correct that one cannot authorize a supposedly unreasonable service charge in states which have a reasonableness requirement, the legal question itself is capable of class-wide determination.

Defendants also argue that variations in the applicable state statutes would render this class action unmanageable. Determining whether McCormick has borne her burden on class certification requires this Court to consider variations in state law, since this action involves multiple jurisdictions. *See Castano*, 84 F.3d at 741. Variations in state law may swamp any common issues and defeat predominance. *Id.* Furthermore, given the plaintiff's burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority in this regard can be overcome. *Id.* (internal citation omitted).

McCormick argues that any differences in the relevant statutes of the seven class member states are insignificant to the determination of CPRS' liability. The state laws all require that a service charge be reasonable.[2] The fact that the states have different dollar

---

[2] "On return of a payment device to the holder following dishonor of the payment device . . . [any person] retained . . . to seek collection of the face value of the dishonored payment device may charge the drawer or endorser a reasonable processing fee of not more than $30." TEX. BUS. & COM. CODE § 3.506(b) (Vernon 2006).

"The payee or holder . . . of any check . . . that has been dishonored . . . shall be allowed to assess the maker a reasonable service charge of not more than $30." HAW. REV. STAT. §

amount ceilings for service charges is irrelevant because McCormick is not claiming that CPRS's service charge exceeded the dollar amount ceiling, but rather exceeded what is reasonable. As the Court understands it, McCormick is alleging that the cost to CPRS in check representment is always less than one dollar, that this minimal cost is disproportionate to CPRS's fixed service charge in any of the jurisdictions because it falls far short of even

---

490:3-506:5 (2008).

"[In case of a dishonored check] the person who issues the check . . . is liable to the payee or the payee's assignee for a service charge in a reasonable amount, not greater than $30." MONT. CODE ANN. § 27-1-7171(2) (2007).

"If a check is dishonored, the payee may collect from the maker a reasonable fee representing the cost of handling and collecting on the check. The total fee for any single check may not exceed $25." OR. REV. STAT. ANN. § 30.701(5) (2008).

"A maker makes good on a check . . . by paying to the holder the face amount of the instrument, together with any merchant's posted reasonable bad check handling fee not to exceed fifty dollars." KY. REV. STAT. ANN. § 514.040(4)(b) (2008).

"If a check that is dishonored . . . is not referred to the prosecuting attorney . . . the party to whom the check was issued, or his agent or assignee, or a holder, may collect from the issuer, in addition to the face amount of the check, a reasonable service charge, not to exceed twenty-five dollars, plus an amount equal to the actual charge by the depository institution for the return of each . . . dishonored instrument." MO. STAT. ANN. § 570.120 (2008).

"Any person who . . . makes any payment of obligation other than an obligation on a consumer credit transaction . . . by means of making any check . . . which is not paid upon its presentment is liable to the holder of such check . . . for one of the following amounts, at the option of the holder or such assignee: (a) the face amount of the check . . . plus actual damages . . .; or (b) an amount equal to the face amount of the check . . . and (I) the amount of any reasonable posted or contractual charge not exceeding twenty dollars and (II) if the check . . . has been assigned for collection to a person licensed as a collection agency . . . twenty percent of the face amount of the check . . . but not less than twenty dollars . . . ." COLO. REV. STAT. ANN. § 13-21-109 (2008).

the lowest amount ceiling of $20, and that the service charges in question are therefore unreasonable under any of the state statutes.

Two of the states, Colorado and Missouri, authorize the imposition of fees above a reasonable service charge in certain instances, but McCormick argues that neither of those provisions are relevant in this case. Colorado permits additional recovery if the check has been assigned for collection to a person licensed as a collection agency in the amount of twenty percent of the face amount of the check, but not less than twenty dollars. *See* COLO. REV. STAT. ANN. § 13-21-109(b)(II) (2008). Missouri permits the recovery of an additional amount equal to the actual charge by the depository institution for the return of each unpaid or dishonored instrument. *See* MO. REV. STAT. § 570.120(6)(2) (2008).

McCormick summarily dismisses the applicability of these Colorado and Missouri provisions to the class claim, arguing that these provisions deal with "variable charges" and are not implicated because CPRS does not base its service charge in individual cases on the actual costs of check re-presentment nor the face amount of the check. While McCormick may be correct that such provisions apply only in the case of a collection agency which makes variable charges in individual cases, this contention is not self-evident and she does not cite any authority in her favor. Her perfunctory discussion on this point does not meet her burden of demonstrating to this Court that the Colorado and Missouri provisions would not raise individual factual issues that could undermine the possibility of class-wide adjudication. The Court thus acts within its discretion to narrow the definition of the proposed class, striking the inclusion of individuals from Colorado and Missouri. *See In re*

*Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004). Because none of the other states' statutes allows for the imposition of additional fees that could impede a class-wide inquiry into the reasonableness of CPRS's service charge, the Court finds the question of whether CPRS's service charge is unreasonable under Texas, Montana, Hawaii, Oregon, or Kentucky law to be a common question of fact.

Defendants also dispute predominance of common questions of fact on the grounds that it is necessary first to determine whether each class member qualifies as a consumer under the FDCPA. Under the FDCPA, the term "consumer" means any natural person obligated or allegedly obligated to pay any debt, 15 U.S.C. § 1692a(2), and "debt" means any obligation or alleged obligation to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5). Thus, CPRS can be liable under the FDCPA to individuals who incurred debt for only certain kinds of purchases. According to Defendants, in order to ascertain whether a person qualified for class membership, individualized inquiries would be required into whether that person's purchase was for "personal, family, or household purposes," as opposed to commercial purposes.

In *Ballard*, a court in the Ninth Circuit rejected an identical argument made by a check collection service against class certification. In that case, based on evidence that the defendant provided check guarantee services primarily for retail stores and categorized all checks as either "personal" or "business" in its computerized database, the court held that proof that the dishonored check was personal created a rebuttable presumption that the

transaction was consumer in nature, for the purposes of the FDCPA.  *See Ballard v. Equifax Check Servs., Inc.*, 158 F. Supp. 2d 1163, 1172  (E.D. Cal. 2001) (citing *Ditty v. Checkrite, Ltd.*, 1998 WL 663357 *2 (D. Ut. 1998)) (holding that "the use of a personal check, as identified on the defendants' computer system, creates a rebuttable presumption that the debt was consumer in nature and is sufficient to make out plaintiffs' prima facie case" as required for class certification).  The *Ballard* court went on to hold that the defendant could rebut this presumption on an individual basis in the damages phase of the action.  *Id.* at 1173.

 In this case as well, CPRS's computer system sorts checks into personal or business, Hobart Dep. 11: 1-17, Plaintiffs' Reply Appx. 76.  Unlike in *Ballard*, though, Plaintiffs have not presented adequate evidence that CPRS provides services only or even primarily for retail stores.  Additionally, though the class is defined as limited to "consumers" who received a collection letter from CPRS and paid a processing fee on a defaulted check, it is unclear if "consumers" simply means all writers of defaulted checks, or, if it is to mean those check writers falling within the FDCPA definition of consumer, how that sorting is to happen.

However, given that CPRS's computer system sorts checks into personal and business, the Court will exercise its discretion to certify a class limited to those persons whose defaulted check was classified as personal by CPRS's computer system.  With regard to this class of "personal check writers," the  Court will presume that the transaction in question was consumer within the meaning of the  FDCPA.  At the damages phase, CPRS can rebut that presumption with regards to any individual class member.  Thus, the

distinction between personal and commercial debt for the purposes of the FDCPA does not impede certification of the class. The modified class is, in relevant part, accordingly limited to those who received a letter or notice from CPRS collecting or attempting to collect a service charge or processing fee in connection with a *personal* check returned for insufficient funds.

After modifying the class to exclude persons from Missouri and Colorado and limiting it to persons from whom CPRS collected or attempted to collect on a personal check, the Court finds that common questions predominate over issues affecting individual class members and that a class action would be manageable, thereby meeting the predominance requirement of Rule 23(b)(3).

In this case, the Court finds that class adjudication is also superior to other available methods for the fair and efficient adjudication of the controversy. *See* FED. R. CIV. P. 23(b)(3). The case authorities that the parties cite regarding superiority in FDCPA claims, all from outside this jurisdiction, are divided over whether the FDCPA's cap on additional damages in a class action, the lesser of $500,000 or one percent of the net worth of the debt collector, *see* 15 U.S.C. § 1692k(a)(2)(B), should weigh against class certification, because class members stand to recover more if they file individual actions. *Compare Gradisher v. Check Enforcement Unit, Inc.*, 209 F.R.D. 392, 394 (W.D. Mich. 2002) (decertifying class because the FDCPA damages cap meant that recovery for each class member would be minimal) *with Weber v. Goodman*, 9 F.Supp.2d 163 (E.D.N.Y.1998) (holding that certification was proper, even though the class plaintiffs stood to recover no more than two

dollars per member, because it was unlikely that the class members would file individual suits).

In addition to what are likely to be minimum actual damages, given the amount of the service charge in each case, the statutory damages for an individual FDCPA claim are $1000 dollars at a maximum. *See* 15 U.S.C. § 1692k(a)(2)(A). In determining statutory damages up to this amount, the Court weighs the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(1). Accordingly, a damages award close to $1000 is not necessarily the amount that the vast majority of claimants would win in individual actions, and is therefore not the amount that such individuals are realistically foregoing in pursuing a class claim instead. The fact that the FDCPA allows plaintiffs to recover reasonable attorney's fees and court costs, *see* 15 U.S.C. § 1692k(a)(3), thereby facilitating the prosecution of individual claims, is not determinative either. After all, the FDCPA specifically mentions the possibility of class actions in the previous provision. *See* 15 U.S.C. § 1692k(a)(2)(B).

*Castano* speaks of the existence of a "negative-value" suit, in which any recovery in an individual case would be outweighed by litigation costs, as being the most compelling rationale for finding superiority of a class action, *Castano* 84 F.3d at 748. While individual suits against CPRS would not be of "negative-value," given that an individual plaintiff could recover his attorney's fees in addition to damages, the small damages award at stake in any

single case of excessive service charges would nonetheless be likely strongly to deter the prosecution of individual claims.

In *Castano*, the court was weighing class certification of a suit by smokers against tobacco companies. In finding that a class action was not superior to the prosecution of individual suits, it noted that individual damages were high and punitive damages were available in most states. *Id.* The *Castano* decision cites extensively to Judge Posner's analysis in *Rhone-Poulenc*, which was addressed a situation in which "each [individual] plaintiff if successful [was] apt to receive a judgment in the millions." *Id.* (quoting *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir.)). Thus, the broad statements about the dispensability of class actions made in those contexts, where the damages at stake even in individual cases were in the thousands, tens of thousands, or millions, are not applicable to this case.

Despite the fact that attorney's fees and court costs are recoverable under the FDCPA, given the minimal damages likely at stake for the vast majority of individual claimants, they are unlikely to pursue individual claims. In this context, a class action is the only viable remedy for most members of the proposed class. The Court finds that a class action is the superior method of adjudication. Class certification is thus warranted under the requirements of Rule 23(b)(3).

### VII. CONCLUSION

Because the proposed class, as modified in this Order to relate exclusively to CPRS and also to exclude members from Missouri and Colorado, meets the threshold requirements

of Rule 23(a) as well as the predominance and superiority requirements of Rule 23(b)(3), the Court grants the motion to certify the modified class. The certified class is: all consumers in the states of Texas, Hawaii, Montana, Oregon, or Kentucky who, between January 14, 2004 and the date of this Order, (1) received a letter or notice from CPRS collecting or attempting to collect a service charge or processing fee in connection with a personal check returned for insufficient funds, and (2) paid a service charge or processing fee to CPRS.

Signed March 12, 2009.

_____
David C. Godbey
United States District Judge